**In re PRUDENCE CO., Inc.**
Nos. 27496, 27028.

District Court, E. D. New York.
Nov. 8, 1937.

Thomas Cradock Hughes and Emanuel Celler, both of New York City, for trustees of Prudence Company, Inc., debtor.

Newman & Bisco, of New York City, for Manufacturers Trust Co., as trustee and as depositary.

Milbank, Tweed, Hope & Webb, of New York City, for Chase Nat. Bank of City of New York, as successor trustee and as depositary.

Delafield, Thorne & Marsh, of New York City, for City Bank Farmers Trust Company, as successor trustee of the AA, Third, Fourth, Seventh and Seventeenth Series of Prudence-Bonds.

Dean, King, Smith & Taylor, of New York City, for Lawyers Trust Co., depositary.

Rapaport Brothers, of New York City, for Trust Company of New Jersey, as depositary, and William H. Albright, Frank S. Norcross, and George W. Wolin, as trustees under a declaration of trust dated July 9, 1937.

MOSCOWITZ, District Judge.

The trustees of the debtor herein have excepted to the report of the special master appointed by order of this court made September 30, 1936.

The special master, in a well-considered opinion, recommends that the objections of the trustees of the debtor to the proofs of claim filed by the various corporate trustees be overruled. The substance of the trust agreement is substantially set forth in the report of the special master.[1]

---

[1] A typical trust indenture contains the following provisions under the caption "Remedies on Default":

"In case any event of default hereunder shall occur, and The Prudence Company, Inc., shall have failed to fulfill some obligation in its guarantee endorsed upon any Prudence-Bond issued hereunder, then in each and every such case

"(a) The Trustee may and upon the written request of holders of twenty-five per cent. in amount of all Prudence-Bonds issued and then outstanding hereunder, shall, proceed to collect the interest and principal then unpaid and thereafter accruing upon all securities in the Trust Fund, and to institute proceedings for the foreclosure of any mortgage in the Trust Fund or to cause the Trustee of any mortgage or deed of trust securing bonds, notes or other evidences of indebtedness, any of which constitute part of the Trust Fund, to institute foreclosure or other proceedings thereunder."

A typical deposit agreement provides as follows:

"The Depositary shall have the sole right to take any action deemed proper to

In a case of this magnitude having thousands of creditors, great liberality should be exercised in allowing proofs of claim and not rejecting such proofs of claim upon any technicality unless such objection to the proofs of claim goes to the substance thereof. In the customary and ordinary trust agreement, the corporate trustee is permitted to file proofs of claim in behalf of holders of bonds and certificates. If that were not so, thousands of creditors would be deprived of their right to receive moneys due them. Professor Gerdes, in his well-known work, Corporate Reorganizations, has had occasion to consider this question. In volume 2, § 744, p. 1202, he states:

"Whether or not a mortgage trustee holds such title to the claim of the individual bondholder as entitles him to file a proof of claim as a creditor or real party in interest is a question upon which much confusion exists.

"Ordinarily, the proper party to file such a claim is the individual bondholder, rather than the trustee, because title to the claim rests in the bondholder.

"A holding to this effect has, however, two important disadvantages. To allow each individual bondholder of any normal bond issue to file a claim against the corporate debtor is to invite a flood of litigation which might prove so costly and occupy so much time as to devour the debtor's assets and leave little to be distributed among creditors.

"In addition, the bondholders are generally required to file their claims within an extremely short period of time. In bankruptcy, the period allowed is within six months after adjudication; in equity, the period fixed by the court has often been even shorter. Such limitations are generally valuable because they serve to speed up the proceedings. In connection with the problem under discussion, however, they may result in serious injustice to many bondholders. This is especially true in cases of large bearer bonds issues where notice of the proceedings may fail to reach even a majority of the bondholders in sufficient time to allow them to participate in the plan of reorganization.

"It would therefore seem to be more expeditious and advantageous, both for the bondholders and for the debtor, to impose upon the mortgage trustee an obligation to file proofs of claim for the bondholders because the corporation which acts as trustee generally has far better facilities for acquiring knowledge and obtaining notice of the proceedings.

"When confronted with such a situation in a receivership proceeding, the equity courts have leaned backwards and have read into the trust indentures an intent to have the mortgage trustee file the proof of claim for the bondholders and have expedited reorganizations in this way.

"In bankruptcy cases, the courts have been confronted with a more serious problem when such situations have arisen because of the bankruptcy requirement that the claim must be filed by the real party in interest, and because of the necessity of filing the written instrument, the bond, with the proof of claim. These difficulties have been obviated in most cases by inserting a clause in the trust indenture authorizing the trustee to file proof of claim for the bondholders and by considering the mortgage as a written instrument which could be used as an alternative to the bonds. The prohibition against allowing double claims has been avoided by permitting the mortgage trustee to file proof of claim for all the bondholders if the indenture contained the necessary authorization and then reducing the trustee's claim 'pro tanto' if an individual bondholder filed his own proof of claim.

"Some trust indentures create an additional problem because they contain a pro-

---

protect the mortgage security, to enforce in whole or in part, by foreclosure or otherwise, any of the provisions of the Bond and Mortgage, in the name of itself or of the holders of said certificates . . . and to exercise every right, option or privilege in the Bond and Mortgage contained, and any agreements relating thereto, given to the mortgagee, but shall not be required so to do, except as may be required pursuant to Article XIX hereof. * * *

"Whenever, under the terms of the Bond and Mortgage, the mortgagee shall have the right to take any action or proceeding for the enforcement of any right or rights thereunder, the Depositary . . . . may, and upon the written request of the Corporation, or if the certificates are in default upon the written request of the holders of not less than fifty per cent of the aggregate principal amount of such certificates then outstanding and unpaid, the Depositary shall proceed to take such action or proceeding, but only upon receiving indemnity in form and amount satisfactory to it."

vision that no bondholder shall have the right to institute any suit, action, or proceeding in equity or at law upon any of the bonds unless the holders of a majority in amount request the trustee to act. This type of provision is inserted solely for the benefit of the bondholders as a class and will be enforced only when the majority of bondholders are bona fide creditors of the corporation whose dominant interests require the enforcement of the obligation contained in the bond and indenture. If it can be shown that the majority of the bonds have fallen into the hands of the debtor, the courts will disregard the limitation on the bondholders' power to act because the enforcement of the provision in such a case would be contrary to the purpose of its insertion.

"It is clear that today a mortgage trustee may, if the trust indenture contains appropriate provision, prove the claim for all of the bondholders both in equity receivership cases and in bankruptcy proceedings. In proceedings already instituted under section 77B [11 U.S.C.A. § 207], the judges have, in the exercise of their discretion, allowed the trustees for the bondholders to file proofs of claim for the bondholders and have reserved to the bondholders the right to file individual claims."

In volume 3, § 1124, pp. 1784–1786, Professor Gerdes states:

"If the indenture creates an obligation on the part of the debtor which runs directly to the trustee in the event of a default, it would seem that the trustee is a creditor in proceedings under section 77B [11 U.S.C.A. § 207] because by express definition the holder of a claim of any character against the debtor or its property is a creditor. But the cestuis que trust are also creditors of the debtor by virtue of the same definition. In such cases, therefore, there are two sets of creditors for the same obligation.

"If this situation were allowed to stand unqualified, it would be likely to result in confusion and injustice. The problem has been solved in bankruptcy and equity receivership proceedings by allowing the trustee to file a claim as creditor for the full amount of the indebtedness secured by the deed, mortgage, or indenture, but the trustee's claim is subject to reduction to the extent that bond or noteholders file individual claims. This procedure has been justified legally on the theory of a dual obligation on the part of the debtor running to the trustee

and to the individual cestuis que trust, and morally on the ground that in many instances where the cestuis que trust are the holders of unregistered securities they receive no actual notice of the proceedings and would frequently be barred from filing their claims if the trustee were not permitted to claim for their benefit. This rule, and its justification, are undoubtedly applicable to proceedings under section 77B."

 The proofs of claim filed by the corporate trustees should be allowed, otherwise grave-injustice would be done to innocent bond and certificate holders. Such corporate trustees, while permitted to file proofs of claim, are not entitled to vote on the plan or reorganization unless the trust indenture specifically authorizes them so to do. In re Allied Owners' Corporation, 2 Cir., 74 F.2d 201, 97 A.L.R. 360.

The report of the special master will be confirmed.

Settle order on notice.